IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
STEVEN T. WHITE,
                              *
     Plaintiff,
                              *
          v.                       CIVIL NO.: WDQ-06-1098
                              *
NORFOLK SOUTHERN RAILWAY
CO., INC., AND JONES-HAMILTON *
CO.,
                              *
     Defendants.
                              *
```

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Steven T. White sued Norfolk Southern Railway Co., Inc.
("Norfolk Southern"), Jones-Hamilton Co. ("Jones-Hamilton"), and
Helm Financial Corp. ("Helm")[1] for negligence.  Pending are
White's motion for leave to file a surreply and Norfolk Southern
and Jones-Hamilton's motions for summary judgment.  For the
following reasons, the motions will be granted.

I.   Background

Farmers & Planters Co. ("Farmers"), located in Salisbury,
Maryland, sells agricultural and crop products to farmers.
Jones-Hamilton manufactures agricultural products, and used
Farmers to warehouse and ship these products to Jones-Hamilton

---

[1] On February 21, 2007, the Court granted Helm's motion to
dismiss for lack of personal jurisdiction.  Paper No. 37.

customers.  During February and March 2004, a railcar, owned by Helm and leased to Jones-Hamilton, was transported from Jones-Hamilton's factory in Ohio to Baltimore, Maryland.  The railcar contained a Jones-Hamilton poultry product, and was bound for Farmers' location in Salisbury.  When the railcar reached Baltimore, Norfolk Southern picked it up and after several stops in Pennsylvania and Delaware, transferred it by rail to Farmers on March 11, 2004.

The railcar delivered to Farmers had a door with vertical and horizontal handles.  The horizontal handles intersect the vertical handle, and are secured in their horizontal position by "keepers."  Rotating the vertical handle counterclockwise unlocks the door.  Once the door is unlocked, the horizontal handles are lifted up from the keepers and pulled outward.  This moves the door onto a set of rollers, which the door is slid along to open.

On March 11, 2004, White was working as a general manager at Farmers, and attempted to unload the railcar.  White cut a plastic seal that covered the vertical handle and rotated the handle counterclockwise.  The door unlocked and White raised the right horizontal handle, but he could not raise the left horizontal handle.  White "tapped" the handle from underneath the keeper three or four times.  Steven T. White Dep. 26:18-27:1.  After the last tap, the handle flew back and struck White in the face and mouth, causing serious dental injuries.

2

On May 1, 2006, White filed suit against Norfolk Southern and Jones-Hamilton.

II.  Analysis

A. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 324. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

B. Choice of Law

In this diversity jurisdiction case, Maryland law applies because White's cause of action arises out of an accident that occurred in Salisbury, Maryland. *See Erie R.R. Co. v. Tompkins*,

304 U.S. 64 (1938); *see also Hauch v. Connor*, 295 Md. 120, 123,
453 A.2d 1207, 1209 (Md. 1983) ("[T]he substantive tort law of
the state where the wrong occurs governs."). Under Maryland law,
a plaintiff pursuing a negligence cause of action must show that:
(1) the defendant owed a duty to the plaintiff; (2) the defendant
breached that duty; (3) the plaintiff suffered actual injury or
loss; and (4) the injury or loss proximately resulted from the
defendant's breach of duty. *Lloyd v. Gen. Motors Corp.*, 397 Md.
108, 131-32, 916 A.2d 257, 270-71 (Md. 2007).

C. White's Motion for Leave to File Surreply

White contends that Norfolk Southern raised a preemption
argument in its Reply that was not made in its original motion to
dismiss. Norfolk Southern concedes that the preemption argument
was first raised in its Reply, but argues that it needs an
opportunity to more fully brief the issue. Norfolk Southern has
sufficiently discussed this issue in its Reply. Accordingly, the
Court will grant White's motion and will consider White's
surreply in this decision.[2]

D. Norfolk Southern's Motion for Summary Judgment

1. Preemption

Norfolk Southern contends that its duty to inspect is

---

[2] Although the Court will grant White's motion, it will not
consider White's additional arguments on Norfolk Southern's
negligence. These issues were sufficiently briefed and discussed
in the pleadings and accompanying briefs. *See Khoury v. Meserve*,
268 F. Supp. 2d 600, 605-06 (D. Md. 2003).

governed by federal law.  Specifically, Norfolk Southern asserts that the Federal Railway Safety Act ("FRSA")[3] governs all pre-departure inspections for freight cars, and that a duty to inspect door handles is not included; therefore, it had no duty to inspect the door handle.

White counters that since no specific federal regulation governs a duty to inspect freight car doors, federal law should not apply.  White contends instead that state law should govern and be determinative of Norfolk Southern's duty to inspect.

Under the FRSA, the Federal Railroad Administration ("FRA") promulgates regulations and issues orders for all areas of railroad safety.  49 C.F.R. § 1.49(m) (2006).[4]  The FRA has adopted minimum safety standards for inspecting freight cars. *Id.* § 215.1.  Railroads are required to designate inspectors who inspect freight railcars at each location where they are placed in a train.  *Id.* §§ 215.11, 215.13.  The inspectors examine the cars for defects and determine whether the cars are in compliance with federal safety standards.  *Id.* §§ 215.13, 215.101–.129.  If an inspector is not on duty, the railroad must still inspect the freight car.  *Id.* § 215.13(c).  This inspection covers conditions

---

[3] 49 U.S.C. § 20101 *et seq.* (2006).

[4] The FRSA authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety."  49 U.S.C. § 20103.  The Secretary delegated this vested authority to the FRA.  49 C.F.R. § 1.49(m).

that are readily discoverable, including the safety of the freight car door. *Id.* app. D.

"Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993). The FRSA has an express preemption clause. *Id.* at 664.[5] The *Easterwood* Court found that legal obligations imposed on railroads by the common law fell within the "broad phrases" of the FRSA preemption clause. *Id.* at 664.[6] To preempt specific tort claims under the FRSA, the

---

[5] The clause provides:

(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

(A) is necessary to eliminate or reduce an essentially local safety or security hazard;
(B) is not incompatible with a law, regulation, or order of the United States Government; and
(C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a) (as amended by Pub. L. No. 110-53, 121 Stat. 266, 453 (2007)).

[6] Although the text of the preemption clause has changed slightly since *Easterwood*, the Supreme Court has relied on this

federal regulation must "substantially subsume" the subject matter of the relevant state law. *Id.*

Norfolk Southern need not establish compliance with the regulations at issue in order for the Court to find that they have a preemptive effect. *Kalan Enters., LLC v. BNSF Ry. Co.*, 415 F. Supp. 2d 977, 980 (D. Minn. 2006). Preemption analysis under the FRSA also does not require inquiry into the purpose of the regulation. *Mehl v. Canadian Pac. Ry., Ltd.*, 417 F. Supp. 2d 1104, 1008 (D.N.D. 2006). Although the regulations must "substantially subsume" the subject matter, "a regulatory framework need not impose bureaucratic micromanagement." *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005).

On August 3, 2007, 49 U.S.C. § 20106 was amended to address its preemptive effect. The section title was changed to "Preemption" and a subsection was added to clarify the FRSA's impact on state law causes of action. Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, 121 Stat. 266, 453 (2007).[7] The new subsection states that FRSA regulations are not intended to preempt state law personal injury claims alleging that a defendant has not met a

---

reading in a later case. *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 352-55 (2000).

[7] The amendments apply to pending state law claims occurring on or after January 18, 2002. Pub. L. No. 110-53, 121 Stat. at 453.

particular federal or state duty of care.  *Id.*[8]  Although prior

to this amendment, White's claim was most likely preempted, *see*

*In re Derailment Cases*, 416 F.3d at 794 ("There is no indication

that the FRA meant to leave open a state tort cause of action to

deter negligent inspection."), the text of the statute is clear

that absent an incompatibility with federal law, White's state

law claim is not preempted.

2. Negligence

      White alleges that a bend in the handle caused the handle

to improperly release, resulting in his facial injuries.  White

theorizes that the bend was caused by either: improper repair of

the handle, improper loading of the agricultural product, or load

---

[8] The new subsection provides:

      (b) Clarification regarding State law causes of action.--(1)
Nothing in this section shall be construed to preempt an action
under State law seeking damages for personal injury, death, or
property damage alleging that a party--

      (A) has failed to comply with the Federal standard of care
established by a regulation or order issued by the Secretary of
Transportation (with respect to railroad safety matters), or the
Secretary of Homeland Security (with respect to railroad security
matters), covering the subject matter as provided in subsection
(a) of this section;
      (B) has failed to comply with its own plan, rule, or
standard that it created pursuant to a regulation or order issued
by either of the Secretaries; or
      (C) has failed to comply with a State law, regulation, or
order that is not incompatible with subsection (a)(2).

Pub. L. No. 110-53, 121 Stat. at 453.

shifting en route to Farmers.[9]  White contends that Norfolk Southern breached its duty to inspect the railcar and to provide Farmers with a reasonably safe railcar to unload.

Norfolk Southern counters that White has produced no evidence that the handle was defective or that Norfolk Southern loaded the railcar or repaired the handle.  Northern Southern also explains that load shifting could not have caused a problem with the handle.

Norfolk Southern disputes whether the handle was defective. It points to White's deposition testimony for support, as White stated that before he opened the door, he "didn't notice anything different" about the handle, or nothing that "stood out" about the door's appearance.  White Dep. 42:1-3, 100:18.  Although Norfolk Southern acknowledges White's assertion that the left horizontal handle "didn't have the same curvature" as the right handle, *Id.* 84:7, it references White's statement that this condition was not apparent before opening the door or that it caused the problem with opening the door.  *Id.* 84:10-13, 90:1-5.

White contends that he noticed that the door was discolored before he attempted to open it.  Pl.'s Opp'n Supp. Mem. (Norfolk Southern) at 6.  At his deposition, White testified that it looked like repairs had been made on the door because of its

---

[9] This theory is alleged by a proposed lay expert for White who has worked for railroads for 26 years.  Pl.'s Opp'n Supp. Mem. (Jones-Hamilton) at 3 & n.4.

color, and that the left horizontal handle looked new and was
shaped differently from the right handle.  White Dep. 83:10-20,
99:12-18.  To support these statements, White provides the
railcar's repair record from February 10, 2004, when some work on
the door was done and paid for by Jones-Hamilton.  Pl.'s Opp'n
Supp. Mem. (Norfolk Southern) Ex. D.

   Although no Maryland case appears directly on point, the
parties focus on *Norfolk & W. Ry. Co. v. Baker*, 311 S.E.2d 766
(Va. 1984), and contend that it supports their positions.  In
*Baker*, a consignee's employee was injured when a boxcar door fell
on him while he was unloading flour.  *Id.* at 767.  An initial
carrier had transported the boxcar to Chicago, and the delivering
carrier then transported the boxcar to the consignee's place of
business.  *Id.*  The employee contended that the delivering
carrier had breached its ordinary duty to inspect, and that this
breach was the proximate cause of his injuries.  *Id.*  The *Baker*
court emphasized the lesser duty of care of a delivering carrier
in overturning a jury verdict in favor of the employee.  *Id.* at
769.  The court explained that a delivering carrier's duty of
care was to discover any "fairly obvious" defects in the car and
to deliver a car reasonably safe to unload.  *Id.* at 768.

   White argues that the *Baker* standard and his deposition
testimony bar summary judgment.  Pl.'s Opp'n Supp. Mem. (Norfolk
Southern) at 6.  White asserts that "it certainly presents a jury

question whether a reasonable inspection by a railroad car inspector familiar with the way railroad cars should look and operate would have discovered the hidden defect" causing White's injuries. *Id.* Norfolk Southern seizes on White's statement that the door handle defect was "hidden," arguing that this type of defect could not be uncovered by an inspection for "fairly obvious" defects. Norfolk Southern's Reply Supp. Mem. at 12. Norfolk Southern also emphasizes White's deposition testimony that he did not notice anything markedly different about the handle before he attempted to open the door. *Id.* at 11.

Viewing the facts in the light most favorable to White, a reasonable jury could not conclude that Norfolk Southern was negligent.[10]  White has not produced evidence that an inspection for "fairly obvious" defects by Norfolk Southern would have uncovered the allegedly defective door handle. Accordingly, Norfolk Southern's motion for summary judgment will be granted.[11]

---

[10] As the Court has determined that a reasonable jury could not find Norfolk Southern negligent, it will not address Norfolk Southern's alternative arguments that White assumed the risk or that his claim is barred by his contributory negligence.

[11] White's alternative *res ipsa loquitor* argument is also without merit.  White argues that the freight car was under the exclusive control of both Norfolk Southern and Jones-Hamilton. Pl.'s Opp'n Supp. Mem. (Norfolk Southern) at 8-9.  As White cannot establish Norfolk-Southern's exclusivity over the freight car, he cannot satisfy the elements of *res ipsa loquitor*.  *See Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36, 697 A.2d 89, 92-93 (Md. 1997); *see also infra* Part II.E.

E. Jones-Hamilton's Motion for Summary Judgment

White relies on *res ipsa loquitor* to prove negligence and breach of a duty of care by Jones-Hamilton.  White contends that Jones-Hamilton was the last party to open and close the freight car door, as the railcar arrived at Farmers with a seal over the door handle.  White also submits a repair record for the freight car from February 2004, paid for by Jones-Hamilton, which White contends is evidence of work done on the railcar door.  White also asserts that a bend in the handle caused his injuries, and the bend was a result of improper repair of the handle, improper loading of the agricultural product, or load shifting en route to Farmers.  Pl.'s Opp'n Supp. Mem. (Jones-Hamilton) at 3 & n.4.

Jones-Hamilton counters that White cannot satisfy any of the elements of his *res ipsa loquitor* claim.  Jones-Hamilton argues that White's actions contributed to his injuries and that the railcar was not under Jones-Hamilton's exclusive control at the time of the accident.

In Maryland, a plaintiff must establish three elements to create an inference of negligence by a defendant under *res ipsa loquitor*: (1) the event is of a kind that does not normally occur absent negligence; (2) the event was caused by an instrumentality within the defendant's exclusive control; and (3) an act or omission by the plaintiff did not cause the event.  *Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36, 697 A.2d 89, 92-93 (Md. 1997).

White has not demonstrated that his "tapping" the handle did not cause its release or that Jones-Hamilton was in exclusive control of the railcar before it reached Farmers; therefore summary judgment is appropriate on this claim.

That the freight car at issue was repaired in the month previous to the accident, and that the record reveals that work was done on the door, do not establish that negligent repairs were made to the door handle.  Similarly, although the railcar originated at Jones-Hamilton's plant, it was transported by CSX Transportation to Baltimore, Maryland, and then to locations in Pennsylvania and Delaware by Norfolk Southern before it arrived at Farmers.  Norfolk Southern's Supp. Mem. at 2.  The seal over the door handle does not establish that the freight car was in Jones-Hamilton's exclusive control for the trip from Ohio to Salisbury, Maryland.  *See Joffre v. Canada Dry Ginger Ale, Inc.*, 222 Md. 1, 10, 158 A.2d 631, 635 (Md. 1960) (defendants' control not exclusive when soda bottles were on display in delicatessen for two months before one bottle inexplicably shattered).  As White cannot establish the negligence of Jones-Hamilton under the *res ipsa loquitor* doctrine, Jones-Hamilton's motion for summary judgment will be granted.

13

III. Conclusion

For the reasons discussed above, White's motion for leave to file a surreply and Norfolk Southern and Jones-Hamilton's motions for summary judgment will be granted.


September 21, 2007                        /s/
Date                                     William D. Quarles, Jr.
                                         United States District Judge

14